## SUPERIOR COURT

Lodovina Boiani  
vs.  
Ray B. Wilson, Jr., and  
Willard M. Pettey  
} Eq.No.1981

### RESCRIPT.

March 17, 1925

SUMNER, J. The complainant, Lodovina Boiana, has brought her bill in equity against Ray B. Wilson, Jr., and Willard M. Pettey. She states that on December 1, 1922, execution was levied upon a parcel of real es-

tate owned by her upon a judgment rendered on June 16th, 1922, in favor of Hyman Cherlin for the sum of $300; also that on February 6, 1923, there was levied upon the same parcel an execution issued on December 29, 1922, in favor of Israel Smith for the sum of $57.80; that the plaintiffs in the above two executions were represented by the same attorneys (viz: the firm of Burdick & MacLeod); that she had no means except that derived from the rental of this property; that she informed the said attorneys of that fact and they agreed to accept partial payments on the executions and told her that the property would not be sold thereunder; that she paid on said executions the total sum of $250; that on June 5, 1923, she tendered the further·sum of $50 to one of the said attorneys to be applied on said executions and was informed by him that she would have to see his associate about the matter; that the' associate was out and she did not see him on that day; that she learned on June 23rd that her property had been sold under execution sale for the sum of $96; that on July 2nd (subsequent to the execution and recording of the sheriff's deed) she called upon the attorneys and the sheriff and tendered the amount due on the executions but that her offer was refused. She also claims that there is an apartment house on the premises costing over $43,000, on which there were two mortgages totalling $16,000 and that the price of $96 obtained at the sheriff's sale is inadequate and unconscionable, and asks that the sale and the deed given thereunder be declared null and void:

The respondents deny that they agreed to accept partial payments on the executions and that the property would not be sold thereunder.

The testimony of the attorneys for the respondents is to the following effect: The judgment in the' Cherlin case was obtained in June and Mr. Corcoran, of the firm of Burdick & MacLeod, had charge of its collection. The matter ran along for a number of months and finally, in the following March, complainant began to make payments on account. On May 28, 1923, Mr. Peckham, who had charge of the Smith execution, wrote complainant a letter insisting that the judgment in that case should be settled before June 14, 1923, and directing her to call upon Sheriff King before that time as he was to sell the property on that day.

The complainant admits receiving a letter about that time but denies that she read it. She did, however, call at the office of Burdick & MacLeod, June 5th, and tendered $50 on the Cherlin claim.

Mr. Corcoran testified that he told her when she called that she must make some arrangement about the Smith claim and if she could not pay both claims, he would give her back the check so she could pay it to Mr. Peckham on the Smith claim and that he would hold up the sale under the Cherlin execution meanwhile; that she finally took the check away with her. She did not see Mr. Peckham or make any arrangement with him or Sheriff King about settling the Smith claim.

The Court believes the testimony of the respondents on this point. It is improbable that the attorneys for the plaintiffs in the two executions that had been obtained would have agreed to continue the sales indefinitely until the debts were paid, and the complainant herself in cross-examination stated that she did not remember how long they agreed·to wait for her to make the payments. If she received the letter of May 28th, and the Court believes she did, she had full warning of the sale and if in doubt as to its meaning she should have con-

sulted her attorney, Mr. Pettine in Providence, who had represented her in these two cases and who, apparently, was continuing to advise her. The execution in the Smith case had been taken out five months before and the sale had been continued once. In the Cherlin matter, upon which she had made some payments, the judgment had been rendered nearly a year before. It would seem as if the plaintiffs' attorneys in the Smith and Cherlin cases had given fair consideration to the defendant in delaying the sales under the executions. Sheriff King testifies that the complainant called upon him after the execution sale and offered to pay him the amount of the Smith claim; that he told her he would not take the money and referred her to Mr. Peckham. As this alleged tender was made subsequent to the execution sale and to the recording of the sheriff's deed, the Court thinks it is not a material issue in this case.

The Court can not say that the price obtained at this sale, $96, was under all the circumstances an unfair or unconscionable price. There were two mortgages upon the estate aggregating $16,000. The semi-annual interest on one of these was five months overdue and on the other two months overdue. The unpaid interest on the two mortgages and the taxes due the preceding September, aggregated over a thousand dollars.

There was an outstanding right of curtesey on the part of the husband of the complainant, which was worth from $1953 to $3300, depending upon the market value of the estate. Complainant's attorney suggested that the amount of the mortgages should be deducted from the value of the property in ascertaining the value of the right of curtesy. The right of curtesy upon the entire estate would subsist unless one of the mortgages should be foreclosed and that would mean additional expense, delay and

uncertainty. If the purchasers of the property paid up the mortgages, as they would ordinarily do, the curtesy right of the husband would be reinstated on the entire property. There were also two other prior attachments upon the property, the ad damnums in which amounted to $20,000. Mr. Peckham, who represented the plaintiffs in those cases, testified that in his opinion as a lawyer the prima facie amount of the two claims was over $10,000. Assuming that the two prior attaching creditors could enforce their claims aggregating over $10,000, the amount of the encumbrances outstanding on this piece of property at the time of the sale was apparently about $30,000. The real estate experts who were called, two on each side, estimated the market value in amounts varying from $20,000 to $35,000, and Mr. Dyer, called by the respondents, whose real estate activities seemed by far the largest of the four, estimated the market value at $20,000. It also appeared that the assessed valuation of the property was only $21,900. All the brokers who were asked admitted that real estate in Newport had been inactive for the last three or four years and it is a well known fact that with the ending of the war and the departure of the sailors from Newport, the commercial activities of that city were greatly reduced; and it is also true, as one of the real estate brokers testified, that a sheriff's title is not readily marketable. People do not care to buy into litigation. It may be that complainant is ignorant and illiterate, and it may be that she misunderstood what Mr. Corcoran told her in his office, but on the other hand both of these judgments had been running for a long time, one of them for nearly a year, and it would seem as if the respondents had done all that in fairness they were required to do. Moreover, the complainant had an intelligent attorney who undoubtedly ad-

vised her as to the rights of the plaintiffs to enforce their claims in these two suits.

The court thinks that the complainant has not made out a case, and the bill is denied and dismissed.

For Complainant: A. V. Pettine.

For Respondents: Burdick & MacLeod.